VANBUSKIRK and another *against* THE HARTFORD FIRE
INSURANCE COMPANY:

### IN ERROR.

Personal property, in contemplation of law, has generally no locality or *situs,* but is deemed to follow the person of the owner; and hence a voluntary transfer or alienation is governed by the law of the place of his domicil.

The laws of one country affecting the rights of individuals, will, generally, by the comity of nations, be recognized and executed in another; the principal exception being, where they will be manifestly injurious to the latter or its citizens.

Consequently, a conveyance of personal property, which is valid by the law of the place where it is made, is equally effectual elsewhere.

These principles are applicable to debts and other choses in action, as well as to any other species of ersonal property.

There is no distinction as to locality, between a debt due from a corporation and a natural person.

The citizens of a state are parties to the laws of that state, in such a sense, that they are bound by the operation of its laws on transactions which there take place; and the relations which are created among them, under those laws, accompany them whithersoever they subsequently remove.

Where *A*, having a claim against an insurance company incorporated by the legislature of this state, for a loss on a policy of insurance, countersigned by its agent, and delivered to *A*, in the state of *New-York*, assigned such claim to *B* in the state of *New-York*, on the 14th of *February*, 1837, but did not give notice of the assignment to the insurance company until the 3d of *April*, 1837; and in the mean time, *C*, a creditor of *A*, attached such claim, by process of foreign attachment, in this state; *A, B* and *C* being inhabitants of the state of *New-York ;* and it was found, that by the law of *New-York*, an assignment of a chose in action is effectual upon the delivery of the instrument of assignment, to convey the title to the assignee, not only between the

*Hartford,*
*June, 1842.*

Vanbuskirk
*v.*
Hartford Fire
Insurance
Company.

parties, but as against subsequent purchasers and attaching creditors, without notice of such assignment either to the debtor or such purchasers or creditors; it was held, 1. that the rights of the parties were fixed under, and were to be ascertained by, the laws of *New-York;* 2. that the law in question was not inoperative here, between these parties, as being manifestly injurious to this state or its citizens; 3. that *C* acquired no priority of title over *B*, by the service of the attachment before notice, nor did *B* lose his title under the assignment, by delay in giving notice; and consequently, that *C* was not entitled to recover.

To hold an assignment valid as against citizens of the state in which it was made, which would not be valid, under similar circumstances, as against citizens of another state in which the suit is brought, is not in violation of the constitution of the *United States, art.* 4. *s.* 2.

AFTER the decision of this court in the above-mentioned case, *ante,* 141. 146., the cause came again before the superior court, *September* term, 1841, when there was a further hearing. In addition to the facts previously found, and stated in the report of the case, *ante,* 141, 2., it was now explicitly found, that by the law of the state of *New-York,* as it now is, and has been, during all the transactions in question, an assignment of a chose in action is effectual to convey the title to the assignee, upon delivery of the instrument to him; and no notice need be given to the debtor, that such claim against him has been assigned.

Upon this finding, the court rendered judgment for the defendants; and thereupon the plaintiffs, by motion in error, brought the record before this court for revision.

*W. W. Ellsworth,* for the plaintiffs, contended, 1. That notice of the assignment is necessary by our law, not so much as a constituent part of the contract—the meeting of the minds of the parties—as a rule of public expediency, established to protect the rights of third persons acting *bona fide.* *Judah* v. *Judd,* 5 *Day,* 534. *Woodbridge* v. *Perkins,* 3 *Day,* 364. *Bishop* v. *Holcomb,* 10 *Conn. Rep.* 444.

2. That this regulation the law will enforce in suits brought here, let the owner reside where he may. Suppose, that in the sale of personal property, no change of possession is required by the law of *New-York,* as by our law it is. *A* sells goods to *B* in *New-York,* which a creditor of *A* finds in his possession here: may not such creditor attach them here as *A's* property? Or if *A*, having them in his possession, sells them here to a *bona fide* purchaser, will not the latter be pro-

tected in our courts ?  *The Richmondville Manufacturing Company* v. *Prall*, 9 *Conn. Rep.* 487.  *Sto. Confl.* §318 to 326.    There is not a single case sanctioning the notion, that where *delivery* or *notice* is necessary by our law, it will be dispensed with, by our courts, out of respect to a foreign law.

*Hartford, June, 1842.*

Vanbuskirk
*v.*
Hartford Fire
Insurance
Company.

In case of intestacy, the heirs are *representatives*, holding nothing as their own.   Hence, in relation to personal estate, the law of the intestate's domicil prevails.   So *inter vivos*, we look to the law of the place where the contract is made, to learn the meaning of the parties.   But no case goes so far as to require or allow the court to reject a rule of its own state, founded on general expediency.

3. That the law of this state is to prevail, because the debt, which is the subject of the attachment, is here ; being due from a corporation established by, and acting under, the authority of this state.

4. That if a citizen of *Connecticut* could attach this debt, (as it will be conceded he might,) a citizen of *New-York* has the same right, by virtue of *art.* 4. *s.* 2. of the constitution of the *United States*, securing to the citizens of each state all the privileges and immunities of citizens of the several states.

5. That our courts will not give effect to an assignment according to the *New-York* rule, in preference to our own, because the *New-York* rule is unsafe and inequitable in its operation, while ours is both safe and equitable.

6. That the claim of the assignee is, at best, but an equity, he not having the legal title ; and the *delay* in this case, precludes him from interposing such equity.   2 *Sto. Eq.* 300, 1. 3 *Russell*, 1—30.

*Hungerford* and *Cone*, for the defendants, insisted, 1. That a transfer of personal property according to the laws of the country where the parties reside, will be regarded as an effectual transfer *everywhere*.   *Sto. Confl. L. sec.* 383. *Whipple* v. *Thayer*, 16 *Pick.* 25.   *Daniels* & al. v. *Willard*, *Id.* 36.   *Burlock* v. *Taylor* & al. *Id.* 335.   *Lowry* v. *Hale*, 4 *Law Reporter*, 379.

2. That the same rule is applicable to debts and choses in action.   *Sto. Confl. L.* note to *p.* 329. *sec.* 396, 7, 8, 9.

3. That the 2nd section of the 4th article of the constitution of the *United States*, providing, that "the citizens of each

*Hartford,*
June, 1842.

Vanbuskirk
*v.*
Hartford Fire
Insurance
Company.

state shall be entitled to all the privileges and immunities of citizens, in the several states," is not applicable to this case.

*Ellsworth*, in reply, commented minutely upon the cases cited from 16 *Pick.*, insisting, that they proceeded upon the ground of the *implied assent* of the creditors to the assignment. The assent is an essential part of the contract. Now, the essentials of the contract may be according to the law of the domicil, and yet the question of delivery or notice, as required in another state regarding property *in that state*, may remain untouched. In all the cases referred to, the question in this case did not arise.

Storrs, J. This case was before us, at the last term, (1841) when the judgment in the court below was reversed, because it did not appear with sufficient distinctness, that the law of *New-York* was different from ours, on the subject of assignment of choses in action. The law of *Connecticut* was then stated with accuracy and precision, by Judge *Waite*, in giving the opinion of the court. (14 *Conn. Rep.* 141.) It is now explicitly found by the court below, from the evidence before it, that, by the law of *New-York*, an assignment of a chose in action is effectual, upon the delivery of the instrument of assignment, to convey the title to the assignee, not only between the parties to the assignment, but as against subsequent purchasers and attaching creditors, without notice of such assignment, either to the debtor, or to such purchaser or creditors. Hence, it appears, that there is a direct conflict between the law of *New-York* and *Connecticut* on the subject ; and the assignment in question being valid, by the law of *New-York*, but, by reason of a want of such notice, invalid by ours, the question is, which shall prevail.

It is universally established, as a general rule, in relation to personal property, that it has, in contemplation of law, no locality or *situs*, but is deemed to follow the person of the owner. Hence it results, that a voluntary transfer or alienation is governed by the law of the place of his domicil. It is also a general principle, sanctioned and acted on in all civilized countries, that the laws of one will, by what is termed the comity of nations, be recognized and executed in another, where the rights of individuals are concerned. Therefore,

the law of the place where a personal contract is made, is to govern in deciding upon its validity or invalidity; and a conveyance of personal property which is valid by that law, is equally effectual elsewhere. 1 *H. Blk.* 690. *Story's Confl.* §376. §380. §383. *Burge's Com.* 749. 750. 16 *Pick.* 339. These principles apply to debts and other choses in action, as well as to any other species of personal property. 1 *H. Blk.* 690. 4 *Term Rep.* 182. 192. *Story's Confl.* §362. §397. §398. §399. *Livermore's Diss.* §249. §251. *p.* 140 to 159. *Kaimes on Equity, b.* 3. *ch.* 8. §4. The rule that the law of one nation will be carried into effect in the territories of another, is, however, subject to some exceptions. The only one which can have any application to this case, is, that it will not be allowed to prevail where it will be manifestly injurious to the state where it is sought to be enforced, or to its citizens. Whether the adoption of it will be thus injurious in its consequences, is for the courts of such state, in the exercise of a sound judicial discretion, to determine. It was upon the ground of this exception that the case of *Oliver* v. *Towns,* 14 *Martin's Rep.* 97., was decided; a case which has been sometimes supposed, but erroneously, to impugn the general doctrine which has been stated as to the transfer of personal property. The general rule, as stated, was expressly recognized by the court; but they refused to be governed by it, in that particular case, on the ground that it would, in their opinion, be attended with injurious consequences to the interests of the state of *Louisiana;* and that therefore, the case fell within this well settled exception to the equally well settled general rule. The present controversy, it will be observed, is between citizens of the state of *New-York* claiming the debt in question under our foreign attachment law, against a citizen of the same state, claiming the debt by virtue of an assignment from the original creditor, also a citizen of that state, and there executed, which is found to be valid by the law of that state. None of our citizens, therefore, have any immediate interest in the determination of this particular case; nor are they necessarily affected by it, in any case in which they may be parties. Nor is it perceived how the general interests of this state can be injuriously affected, by our giving effect to this particular law of the state of *New-York,* especially as between its own citizens. Were this the case of an

*Hartford,
June, 1842.*

Vanbuskirk
*v.*
Hartford Fire
Insurance
Company.

Hartford,
June, 1842.

Vanbuskirk
v.
Hartford Fire
Insurance
Company.

attachment by creditors, citizens of our own state, claiming against the assignment which is here interposed, it would perhaps present a very different question, and one on which no opinion is intended to be expressed. Nor is it necessary to decide whether this assignment would be held good as against citizens of any other state than that in which it was executed. By sanctioning this assignment, in the present case, we really do nothing more than to expound and enforce a contract according to the laws of the place where it was made, and give effect to those laws among the citizens of the same state, who reside under a common jurisdiction, and who, while they are entitled to the privileges which they confer, are also bound by the duties, obligations and rights which they create. The inhabitants and citizens of a state are certainly parties to the laws of that state, in such a sense, that they are bound by the operation of those laws on transactions which there take place; and the relations which are created among those who live under a common jurisdiction accompany them whithersoever they subsequently remove. In *Potter* v. *Brown*, 5 *East*, 131. Lord *Ellenborough* said : " We always import, together with their persons, the existing relations of foreigners, as between themselves, according to the laws of their respective countries ; except indeed where those laws clash with the rights of our own subjects here, and one or other of the laws must necessarily give away ; in which case, our own is entitled to the preference. This has long been settled in principle, and laid up among our acknowledged rules of jurisprudence."

According to the relations which existed between the plaintiffs and the assignee, in the present case, when this suit was commenced, which relations were created by laws to which they were mutually subject, the effect of the assignment was to vest in the assignee a perfect title to the debt in question to all intents and purposes, not only against the assignor, but subsequent purchasers and attaching creditors ; and therefore, to leave no right or interest in it remaining in the assignor, upon which a subsequent transfer or attachment could operate.

These being, then, the existing relations between the plaintiffs and the assignee, these their rights as between themselves,

and the latter having become vested with as perfect a title as the laws of the state in which they resided, or indeed any laws, could confer, how do the plaintiffs divest the assignee of that title, or acquire any themselves, by coming into our courts? Their object in suing here, is, not the acquisition of any new rights, but the enforcement of those already existing, according to the remedies which our laws have provided. Whether it is on principles of comity merely, that one state is induced to give to the citizens of others the benefits of its legal tribunals to enforce rights acquired under their own laws, or by virtue of a provision in our national constitution, (*art. 4. sect. 2.*) the plaintiffs are undoubtedly entitled to the benefit of those remedies to as large an extent as is enjoyed by our own citizens. The rule by which those rights are to be ascertained, and that by which they are to be enforced, is, however, altogether different: in the one case, it being the *lex loci*, or the law of the place where they arose, and in the other, the *lex fori*, or the law of the place where the remedy to enforce them is sought.

Applying these familiar principles to the present case, the plaintiffs have a right to the benefit of our accustomed mode of proceeding by foreign attachment, for the purpose of compelling the payment to themselves of any debt due by our citizens to the debtor: this appertains to the remedy merely, which is governed by the *lex fori*. But whether in this case such debt is due to their debtor, or to the persons claiming it by assignment, depends upon the validity of the instrument of assignment; and that is to be determined, at least between the parties here litigating the question, by the laws of the state in which it was executed: that question appertains to the merits of the controversy, and is to be governed by the *lex loci*. *Huber* v. *Steiner*, 2 *Bing. N. C.* 203. *The British Linen Company* v. *Drummond*, 10 *Barn. & Cres.* 903. *De la Vega* v. *Vianna*, 1 *Barn. & Adol.* 284.

This view of the subject furnishes an answer to the claim of the plaintiffs, that by the service of the writ of foreign attachment, in the present case, before notice of the assignment, they acquired a priority of title over the assignee in the debt in question; for by the laws of *New-York*, by which the rights of the parties are fixed and to be ascertained, no such notice was necessary in order to vest in the assignee a

*Hartford, June, 1842.*

Vanbuskirk
*v.*
Hartford Fire Insurance Company.

*Hartford,*
June, 1842.

Vanbuskirk
*v.*
Hartford Fire
Insurance
Company.

perfect title to the debt as against these plaintiffs. There remained in the original creditor no right or interest in the debt upon which the attachment in this case could operate, so as to sequester or secure it for the benefit of the plaintiffs. *Barber* v. *Hartford Bank,* 9 *Conn. Rep.* 407.

It of course furnishes also an answer to the claim that the assignee has lost his title under the assignment, by an unreasonable delay in giving such notice ; since it is impossible to conceive how his title could be lost or affected by a delay, however long, in doing what was not necessary to be done in order to obtain a perfect title. The questions regarding notice can only arise when such notice forms a constituent part of the title of the assignee ; which is not the case here.

The adjudged cases, in which effect has been given to assignments of personal property according to the law of the place where they were made, are numerous, and too familiar to require citation. A few, however, which have been decided in this country, and are so analogous to the case now before us as not to be distinguishable from it in principle, will be mentioned.

In *Burlock* v. *Taylor,* 16 *Pick. R.* 335., it was held, by the supreme court of *Massachusetts,* in accordance with the decisions of the same court the year preceding, in the cases of *Whipple* v. *Thayer, id.* 25., and *Daniels* v. *Willard, id.* 36., that an assignment of personal property, situated in *Massachusetts,* made in and by a citizen of *New-York,* which was valid under the laws of *New-York* as against dissenting creditors, was valid against a subsequent attachment of such property by a citizen of *New-York,* although such assignment would be invalid under the laws of *Massachusetts* as against dissenting creditors. So an assignment in trust, by a citizen of *New-York,* and there made, of personal property situated in *Louisiana,* which was valid by the laws of *New-York,* but invalid by the laws of *Louisiana,* by reason of a reservation or provision contained in it for the benefit of the *assignor,* was held good by the supreme court of *Louisiana* against a subsequent attachment of such property by a citizen of *New-York.* *Chartres* v. *Cairns* & al. 5 *Cowen's R.* 578. in note. The same principle was established, by the supreme court of this state, in 1811, in the case of *Naylor & Sanderson* v. *Huntington,* which is not reported. That was a case of for-

eign attachment, in which the plaintiffs, citizens of *New-York*, sought to recover the amount of a debt due by the garnishee to *G. Manwaring*, a citizen of that state, which had been then assigned by *Manwaring* to *J. Mowatt*, also a citizen of the same state; which assignment was valid by the laws of *New-York*, but had been pronounced to be invalid under our laws. *Naylor* v. *Fosdick*, 4 *Day* 146. The court sustained the assignment. It will be observed, that that was the case of an assignment of a chose in action, and therefore, in its circumstances, more closely resembling that now before us than those cited from *Massachusetts* and *Louisiana*, which would appear to be cases of the assignment of tangible, corporeal, personal property; although in principle there appears to be no distinction between them, nor is any such distinction any where suggested.

It is claimed by the plaintiffs, that a restriction of the validity of the assignment to citizens of the state within which it was made, is in violation of that clause of the constitution of the *United States*, which provides, that " the citizens of each state shall be entitled to all the privileges and immunities of citizens of the several states." *Art.* 4. *sect.* 2. If the plaintiffs should be debarred from the use of our courts, for the purpose of enforcing their legal rights, whether against our own citizens or others, as fully and amply as they may be used by our own citizens for that purpose; this clause of the constitution would perhaps furnish them a just ground of complaint: but this provision surely was not designed either to revive a right of action once lost, or to create a cause of action where none previously existed. The plaintiffs are at liberty to enforce in our courts any legal right of action which they may possess: the question here, however, is, whether any such right of action exists? As has been remarked, that depends upon the effect given to the assignment in question, by the laws of the state in which it was made, which furnish the measure of the rights of the parties in this case, and by which they are governed. When the plaintiffs resort to our courts, it is for the purpose of enforcing the rights with which they were then invested: for that purpose they have the full benefit of the remedies provided by our laws—and more than that they cannot require. If, disregarding the rights and obligations existing between the plaintiffs and the assignee in this case, by virtue of an authority common to them both,

*Hartford,*
June, 1842.

Vanbuskirk
*v.*
Hartford Fire
Insurance
Company.

*Hartford,*
June, 1842.

Vanbuskirk
*v.*
Hartford Fire
Insurance
Company.

under and by virtue of which those rights and obligations were created, we should undertake to vary them, when they resort here, as they have a right to do, for the purpose merely of enforcing them, it would be the exercise of a power as little in accordance with the spirit of this provision of the constitution as with the principles of justice. This same objection, arising under this provision, was made and overruled, in the case of *Burlock* v. *Taylor*, which has been cited. It would equally apply to the other cases which have been mentioned in connexion with it ; and also to the cases where effect has been given to discharges, even of the obligation of contracts, under the insolvent laws of the states, as against citizens of the state where they were made, while they have been expressly adjudged to be unavailing against citizens of other states. *Ogden* v. *Saunders*, 12 *Wheat.* 213. *Blanchard* v. *Russell*, 13 *Mass. Rep.* 1. *Betts* v. *Bagley*, 12 *Pick.* 572. *Hempstead* v. *Read*, 6 *Conn. Rep.* 480. *Baker* v. *Wheaton*, 5 *Mass. Rep.* 509. But from the circumstance that it was not raised by the counsel employed in them, whose notice it would not probably have escaped, it is inferred that it was not considered tenable.

The plaintiffs further insist, that the debt in question, being due from a corporation created by our laws, and therefore existing only within this state, stands on a different ground from debts due by natural persons ; and that it has, from the immobility of the person from which it is due, an implied locality here, which renders it subject, as to its mode of transfer, exclusively to our own law. This point was considered in the case of *Atwood* & al. v. *The Protection Insurance Company*, (*ante* 555.) decided at the present term, where it was held, that, in this respect, there is no distinction between debts due by corporations and natural persons.

The inequitableness of the principle adopted in the state of *New-York* as to the assignment of debts, has been strongly urged upon our attention, as a reason why our own more safe and equitable rule should be preferred. Whatever may be our own views on this subject, it is sufficient for us, that the rule there adopted is neither injurious to our public rights, nor the interests of our citizens, nor offends our morals, nor contravenes our policy, nor violates any of our positive laws. That it is competent for our legislature to prescribe any par-

ticular mo.le, which it should deem fit, in which debts due by our citizens, whether to the citizens of our own or of other states, shall be transferred; in which case, our courts would give efficacy to transfers executed in that mode only, admits of no doubt; for a state may, undoubtedly, impress upon any property within its jurisdiction any character which it may deem expedient, and regulate, as it considers proper, whatever is under its protection. But, unless it.is the subject of some such positive regulation by our laws, or falls within some of the established exceptions to the general rule which prevails as to the transfer of personal property abroad, that rule must prevail. Before we disregard so well settled and so valuable a principle as that by which the laws of other states and countries are thus respected, especially in questions arising among their own citizens, and upon our views of the propriety merely of the laws which they have seen fit to adopt for their guidance, substitute our own as the foundation of their rights and obligations, we ought to be satisfied that we are required to do so, by some express legislative requirement, or that which is equivalent. The exceptions to the universality of the general rule, which are founded on the regard which a state owes to its own morals, rights and interests, and those of its citizens, form qualifications of it which are well understood, and every where recognized; and indeed, the law consists of the general rule taken with those qualifications. But a judicial abrogation of what may be termed a part of the law of nations, which is incorporated into and has become a part, of our common law, could not be justified, by any powers which are confided to our judicial tribunals.

For these reasons, the judgment of the superior court should be affirmed.

In this opinion the other Judges concurred, except CHURCH, J., who was not present.

Judgment affirmed.