## CLINTON M. PETTIS *vs.* HELEN C. PETTIS.

Third Judicial District, Bridgeport, April Term, 1917.

PRENTICE, C. J., RORABACK, WHEELER, BEACH and SHUMWAY, Js.

A written agreement between husband and wife, after reciting that she had left him and had resolved not to live with him again, provided that the wife, in consideration of $800 received from her husband, should support their child during its tender years, for which purpose she was to be allowed to have its exclusive custody, without further expense to him, and that she should not pledge his credit for her own support or that of the child so long as she refused to live with him and retained the child; that upon reaching suitable age the child was to elect whether to live with its father or mother; and that nothing in the agreement should be construed as a condonation by the husband of the wilful desertion of the wife. At the same time and as part of the same transaction, she quitclaimed to him all interest which she as wife or widow might have in his property. *Held* that upon its face, at least, this contract did not express any assent or agreement upon the husband's part that the wife might live separate and apart from him, but merely recognized the unfortunate situation already existing and sought to ameliorate its consequences.

A decree of judicial separation, formerly known as a divorce *a mensa et thoro*, when granted by a court having jurisdiction *in personam* over both spouses, is entitled to full faith and credit in every other State, and so long as it remains in force will operate there as a bar to a subsequent action for a divorce on the ground of desertion.

Such a judgment or decree, however, merely prescribes certain duties and obligations which are to be observed by the parties during the existence of an abnormal relation terminable at their will, and does not affect the underlying marital status; and therefore has no resemblance to a judgment *in rem*. It is purely personal, and hence as against a nonresident, nonappearing defendant not served with process, a foreign decree of judicial separation is entitled to no extraterritorial effect either by way of comity, public policy, or otherwise.

Argued April 12th—decided June 1st, 1917.

ACTION for a divorce upon the ground of desertion, brought to and tried by the Superior Court in New Haven County, *Curtis, J.;* facts found and judgment

rendered for the plaintiff, and appeal by the defendant. *No error.*

*Charles S. Hamilton,* and *John M. Gardner* of New York City, for the appellant (defendant).

*David E. FitzGerald,* with whom were *Eli Mix* and *George W. R. Hughes,* for the appellee (plaintiff).

BEACH, J.  The parties intermarried in New York in June, 1912, the husband being then and now a citizen of Connecticut.  They lived together in Connecticut until May 23d, 1913, when the wife left her home and went to New York, where she has since remained, refusing to live again with her husband.  They have one child between three and four years old.

On May 24th, 1916, the plaintiff husband brought this action for divorce on the ground of desertion, describing his wife as a resident of Tarrytown in the State of New York, and alleging that the desertion began on or before May 23d, 1913.  The defendant appeared, denied the desertion, and filed a cross-complaint for a divorce on the ground of intolerable cruelty.  From a judgment awarding the husband a divorce on the ground of desertion, the wife appeals.

The finding of facts, which is not excepted to, disposes of all the controverted questions of fact as to desertion and cruelty in the husband's favor, and the only reasons of appeal which are pursued on the brief relate to the effect which ought to have been given to an agreement in writing entered into between the parties in December, 1913, and to a judgment of separation and for alimony, made by the Supreme Court of New York in February, 1915, in an action brought by the wife, in which the husband did not appear.

The alleged agreement of separation is contained in

a writing, Exhibit D, signed by the plaintiff and defendant, which recites that Helen C. Pettis has left her husband and resolved that she will not thereafter live with him; that Clinton M. Pettis desires the companionship of his child, but recognizes that it needs a mother's care and is unwilling to support it, except in his own home, any longer than is necessary for its physical well being; and that for the best interest of all concerned, the parties have agreed: (a) that Helen C. Pettis, in consideration of $800 to be used for the support of the child, will support it and make no demand whereby her husband is to be chargeable with its support, and will not pledge the husband's credit for her or its support, so long as she shall refuse to live with her husband and refuse to allow the child to live with him; (b) that Clinton M. Pettis will allow the wife to have the exclusive custody of the child during its tender years, and so long as she will support the child and keep her agreements, it being understood that he is willing to support the child in his own home, and that the child, when it reaches a suitable age, shall elect whether to live with its father or its mother; (c) and that nothing therein contained shall be construed as a condonation on the part of Clinton M. Pettis of the wilful desertion of his wife. At the same time and as a part of the same transaction, Helen C. Pettis gave to her husband a quitclaim deed, Exhibit E, of all her interest as wife and widow in any property owned by him or of which he might die possessed.

The appellant's claim is that this agreement conclusively shows that the husband consented that his wife might live apart from him, and that therefore he cannot charge her with wilful desertion from and after the date of the agreement. *Tirrell* v. *Tirrell*, 72 Conn. 567, 45 Atl. 153; *Bennett* v. *Bennett*, 43 Conn. 313; *Todd* v. *Todd*, 84 Conn. 591, 80 Atl. 717.

Manifestly, this contract does not, on its face, express any agreement on the husband's part that the wife may live apart. On the contrary, it attempts, at least, to exclude the possibility of a construction embodying such an agreement; and in that respect it resembles the agreement printed in the margin of the decision in *Atherton* v. *Atherton*, 181 U. S. 155, 21 Sup. Ct. 544. Taken at its face value, the contract is quite capable of the construction that the husband recognized the fact that his wife had definitely determined not to live with him again, and was attempting to mitigate the consequences of that unfortunate condition of fact by providing, not too liberally, for the temporary support of the child and for the wife's agreement not to pledge his credit so long as she refused to live with him. This is evidently the construction which the trial court put on the Exhibits D and E, after hearing and observing the parties, for the finding is that the plaintiff husband was always ready and willing to receive the defendant at any time into his home, and that there was no justification for the defendant remaining and living apart from the plaintiff or absenting herself from his home, or for failing to return to cohabitation. These findings negative the existence of any actual agreement for separation, and as the Exhibits D and E are not necessarily inconsistent with the findings in this regard, the assignments of error founded on that assumption are overruled.

The remaining question is as to the legal effect which ought to have been given in this action to the New York judgment for separation. That judgment was not pleaded, either in the defendant's answer as a bar to the action for divorce on the ground of desertion, or in the defendant's cross-complaint as a conclusive adjudication of the husband's cruelty. An exemplified copy of the order, the notice, the affidavit on which

it was granted, the summons, complaint, judgment, and findings of fact and law, was, however, received in evidence without objection. From these papers it appears that the judgment was based upon a complaint charging the husband with cruelty and upon proofs in support thereof; that the judgment in terms decrees that the parties be forever separated from bed and board, and provides for monthly alimony until the further order of the court; and that the husband did not appear in· that action and was not otherwise served with process than by publication and by leaving a copy of the summons, complaint and order of service, with him at his home in Connecticut.

Upon this state of the record, it is certain that as against the nonappearing, nonresident husband, the New York judgment is not enforceable as a matter of strict constitutional or private international law. *Haddock* v. *Haddock*, 201 U. S. 562, 26 Sup. Ct. 525; *Pennoyer* v. *Neff*, 95 U. S. 714.

The next question is whether it affords any justification for the wife's continuing to live apart from her husband from and after its date. The complaint admits that Helen C. Pettis is a resident of New York, which undoubtedly has the right to control the marital status of its own citizens, subject, of course, to the necessary consequence, pointed out in *Haddock* v. *Haddock*, 201 U. S. 562, 26 Sup. 525, that it cannot control the marital status of a Connecticut citizen who is not brought within its jurisdiction; unless, indeed, the decree is rendered in the matrimonial domicil which is the legal domicil of both the husband and the wife. *Atherton* v. *Atherton*, 181 U. S. 155, 21 Sup. Ct. 544. It is certain that New York was not the matrimonial domicil of these spouses, for the domicil of the husband has been in Connecticut from a time antedating the marriage; and so the decree of the New York court cannot

claim recognition as a decree of the court of matrimonial domicil.

Nevertheless, the question still remains whether it ought to be received here as a matter of comity or of public policy. In *Gildersleeve* v. *Gildersleeve,* 88 Conn. 689, 692, 92 Atl. 684, we held that an *ex parte* divorce granted in accordance with the laws of South Dakota, to a plaintiff domiciled in that State, would be given effect in our own courts as against a nonappearing Connecticut defendant. That was a decree of absolute divorce which dissolved the marriage and left the parties free to marry again. It affected the marital status, and in that respect was something more than a mere personal judgment. In most of the States of the Union it is held, or assumed, that marital status is a thing of which a court may obtain a species of jurisdiction *quasi in rem,* by obtaining jurisdiction *in personam* of one only of the spouses domiciled in the forum. So that by virtue of the jurisdiction thus acquired over the marital status common to the husband and wife, it may proceed to render a decree affecting the status of the absent defendant over whom it has no jurisdiction *in personam.* The Supreme Court of the United States has recognized this theory and limited its application, so far as the constitutional validity of the decree in other States is concerned, to decrees rendered *ex parte* in the courts of the matrimonial domicil. *Haddock* v. *Haddock,* 201 U. S. 562, 26 Sup. Ct. 525. But, as that opinion points out, the courts of most States, including our own, recognize the validity of such *ex parte* divorce decrees when duly granted in the plaintiff's domicil, whether that be the matrimonial domicil or not. Perhaps the best reason commonly given for recognizing these *ex parte* decrees in cases where the spouses have separate domicils is, that when granted by a competent court in the plain-

tiff's domicil, according to the local law, they are necessarily valid within that State, because every State has an undoubted right to control the marital status of its own citizens according to its own laws; and that being so, it is better that the State of which the other spouse is a citizen should waive its sovereign right and recognize the validity of the decree in order to avoid the harsh consequences of a refusal to do so. As was said in *Gildersleeve* v. *Gildersleeve*, 88 Conn. 689 (92 Atl. 684) on page 698: "It is no light matter, as affecting individual, social or civic interests and good morals, that, through the attitude of the courts in refusing recognition of the judicial action of sister States, a condition should be created where legitimacy becomes dependent upon State lines, where wives in one State become concubines when they pass into another, where husband or wife living in lawful wedlock in one jurisdiction is converted into a bigamist by change of location, where persons capable of inheritance in one part of our country are incapable in another, where certainty of status may readily give way to uncertainty and property rights be thrown into confusion. . . . For the present we may not have uniform divorce legislation, but we may contribute to a uniform treatment of divorced persons and their children, and property and property rights, by obeying the dictates of comity, and thus avoiding the unwholesome and harsh consequences which are the natural fruits of the opposite course."

It is apparent from the foregoing, that the effect to be given to the New York decree of separation depends upon whether it is a judgment purely *in personam*, or whether it is a judgment affecting the marital status. In the former case, it is, as against the nonresident, nonappearing husband not served with process, wholly void, and entitled to no consideration legally

or for reasons of comity or public policy. If, however, it affects the marital status, comity and consistency would require us to recognize it as valid in this State.

A decree for judicial separation, when issued by a competent court having jurisdiction *in personam* over both spouses, is entitled to full faith and credit in every State, and will operate there as a bar to a subsequent action for divorce on the ground of desertion, brought while the decree for separation remains in full force. *Harding* v. *Harding*, 198 U. S. 317, 25 Sup. Ct. 679. We are not, however, referred to any authority as to the extraterritorial effect of a decree for judicial separation in a case where the court which granted the decree, not being a court of the matrimonial domicil, had jurisdiction *in personam* of one spouse only. Hence we examine the question on principle. Historically, the divorce *a mensa et thoro* was an ancient subject of ecclesiastical jurisdiction in England, and the divorce *a vinculo*, which the church did not grant at all, was a much later remedy granted by Act of Parliament. In 1858 the Episcopal jurisdiction in matrimonial causes was transferred to the Crown, the name of divorce *a mensa et thoro* was changed to judicial separation, and the procedure for divorce *a vinculo* was transferred from Parliament to a regular court. Westlake on Private International Law (5th Ed.) p. 89. In *Le Mesurier* v. *Le Mesurier*, L. R. (1895) App. Cas. 517, the House of Lords formally confirmed the principle that jurisdiction to dissolve a marriage was dependent on the legal domicil of the parties, and that residence abroad, however prolonged, when not accompanied by a change of legal domicil, would not give jurisdiction to the local courts to grant a divorce *a vinculo*. Speaking of this case, Westlake says (pp. 90, 91): "But after a period of uncertainty the opinion that divorce *a vinculo*, which affects status, is so different from the

old ecclesiastical divorce *a mensa et thoro*, which was administered for the health of the soul and did not affect status, that it must be subject to rules of its own, and the novelty of the occasion in England must be availed of to establish those rules on the soundest principle, triumphed in *Le Mesurier* v. *Le Mesurier*." On the other hand, it was said in *Armytage* v. *Armytage*, L. R. (1898) Pro. Div. 178, that jurisdiction in a suit for judicial separation need not be referred to the legal domicil of the parties, but that the action might be maintained in, and a decree of separation granted by, the courts of the place where the parties resided, though that was not their legal domicil. Incidentally the question whether the decree of separation affects the status was discussed. And in speaking of the ecclesiastical divorce *a mensa et thoro*, the court said (p. 196): "A woman divorced by the court *a mensa et thoro* and living separate and apart from her husband could not be sued as a feme sole. The effect of the sentence was to leave the legal status of the parties unchanged." The court then discusses the question of whether the Act of 1857, which had the further effect of placing a wife, after a decree of judicial separation, in the position of a *feme sole* in certain respects, had changed the situation so that a decree of separation did affect status, and reaches the conclusion that the decree of separation does not affect status in the sense that it can only be granted in the courts of the legal domicil. In the present case it does not appear that the New York sentence of separation produced any change at all in the wife's legal capacity or property rights, and so, according to the English view, it stands on the same basis as the old ecclesiastical divorce *a mensa et thoro* and does not affect status.

In this country there has been some conflict of opinion upon the point, which in England was covered

by the Act of Parliament, as to whether a divorce *a mensa et thoro* relieved the wife, temporarily, from the disabilities of coverture; but, with the possible exception of West Virginia, where a peculiar force and effect is apparently given to such divorces by the special provisions of their Code, the reported cases seem to agree that a decree of separation does not affect the marital status. "In our mind the judgment of separation from bed and board is not a final proceeding. The relation of husband and wife still exists. A reconciliation may put an end to the judgment." *State ex rel. Stuart* v. *Ellis*, 50 La. Ann. 559, 560, 23 So. 445. "Such a divorce does not dissolve the marriage, though it separates the parties and establishes separate interests between them. . . . The divorce is only a legal separation terminable at the will of the parties, the marriage continuing in regard to everything not necessarily withdrawn from its operation by the divorce." *Dean* v. *Richmond*, 22 Mass. (5 Pick.) 461, 465, 467. "The decree of divorce *a mensa et thoro* between the parties did not affect their *status* of marriage; it simply justified their separation. *Drum* v. *Drum*, 69 N. J. L. 557, 558, 55 Atl. 86. "The parties still remained husband and wife in the eye of the law. . . . An action for limited divorce is really an appeal to a court of equity by one of the parties to a marriage contract for a modification of the marriage relations, duties and obligations as they exist at common law." *People ex rel. Comrs. of Charities* v. *Cullen*, 153 N. Y. 629, 636, 637, 47 N. E. 894. "The relation of husband and wife is not dissolved. It only undergoes a very inconvenient suspension, and which is intended to operate as a continual invitation to the parties to return to their first love." Chancellor Kent: *Barrere* v. *Barrere*, 4 Johns. Ch. (N. Y.) 187, 196.

Independently of authority, a decree that simply

creates a terminable abnormal relation between husband and wife, cannot be said to affect the underlying marital status. At any rate, we give to this decree of separation all the effect the New York courts claim for it, when we treat it as a temporary or at least a terminable modification of the personal rights and obligations of the parties arising out of the marriage contract, without the slightest intention of rescinding the contract itself. It leaves the contract and the permanent contractual relation untouched, and it excuses one of the parties from the obligation of cohabitation, while still holding the other party to the performance of his other contractual duties. Such a decree must rest on the jurisdiction of a court of equity to regulate the conduct of the parties before it. From the wife's standpoint, it is a personal license to refuse to live with her husband. In theory, a court of equity intervenes to protect her against the assertion of a legal right on the part of the husband, on the ground that it is unsafe and improper to require her to submit to cohabitation. From the husband's standpoint, he is, in effect, prevented from exercising his right to cohabitation, although, as Chancellor Kent says, the right of cohabitation is not destroyed, but is merely suspended; and in theory a court of equity assumes the right to control his conduct for the time being, for the protection of his wife. Such being the nature and effect of the decree when both of the parties are before the court, it is difficult to see upon what theory any extraterritorial effect can be claimed for the decree as against a nonresident, nonappearing defendant not served with process.

When both parties are before the court, the decree is conclusive as to the issues of fact upon which it is based. *Harding* v. *Harding*, 198 U. S. 317, 25 Sup. Ct. 679. But in so far as it attempts to regulate the future

conduct of the parties, an *ex parte* decree for judicial separation is necessarily local in its operation on the nonappearing defendant. The State of New York has no right to regulate, and we do not suppose this decree attempts to regulate, the manner in which the non-resident, nonappearing husband should conduct himself toward his wife in Connecticut. The decree does not purport to authorize or require Mr. and Mrs. Pettis to live in Connecticut in a state of marital celibacy unknown to our law. It merely purports to afford the wife a local protection against the assertion by her husband of his right of cohabitation. And if we assume that in spite of its *ex parte* character it accomplishes that purpose, we give it all the effect, so far as Mr. Pettis is concerned, which can be claimed for it.

We have thus shown that a decree of judicial separation does not affect status; that it is not a final decree, but is terminable at any time by the reconciliation of the parties; that it rests upon the jurisdiction of equity to control the conduct of parties before it; and that, in so far as it purports to regulate the conduct of a defendant, not within its jurisdiction, it is necessarily local in its operation. Such a decree has no resemblance to a judgment *in rem*. It is purely personal, and therefore, as against a nonresident, nonappearing defendant, entitled to no extraterritorial effect, by way of comity or otherwise.

There is no error.

In this opinion the other judges concurred, except WHEELER, J., who dissented.