Matter of the Estate of MORRIS BAKER, Deceased, also Known as CHARLES M. BAKER.

(Surrogate's Court, New York County, June, 1920.)

Executors and administrators — when application for revocation of letters of administration granted — marriage — husband and wife — divorce.

> A short time after decedent had married his first wife in the state of Connecticut, which grants divorces against non-resident defendants and in turn recognizes those obtained in foreign states, they separated under circumstances indicating abandonment on his part, but she remained and still is a resident of that state. Later he became a resident of Chicago, Ill., and was there granted a decree of divorce on the ground of desertion, though the summons was served by publication and the defendant did not appear in the action. Thereafter he and his second wife whom he married in the state of Massachusetts became residents of the state of New York, where he died survived by said wife and their infant daughter. *Held,* that an application by the second wife for the revocation of letters of administration on the estate of the decedent granted to the first wife, should be granted.

APPLICATION to revoke letters of administration.

Surrogate's Court, New York County, June, 1920.    [Vol. 112.

Jacob I. Goldstein (Leon Laski, of counsel), for petitioner.

Kugel & Saxe, for administratrix.

FOLEY, S. Bertha Baker applies to revoke the letters of administration heretofore granted to Gussie Baker on the ground that she is the lawful wife of the deceased and that the statements in the petition of Gussie Baker contained a false suggestion of material fact.

Charles M. Baker was married to Gussie Baker in 1893 in New Haven, Conn. A daughter was born to them. A short time afterwards they separated under circumstances which indicate an abandonment by the husband. Gussie Baker remained and still is a resident of Connecticut. Baker became an actor and seems to have prospered as the manager of burlesque productions. The testimony showed that he later became a resident of Chicago, Ill., and there brought an action in the Circuit Court of Cook county against his wife for divorce on the ground of desertion. The summons was served by publication, and there is no evidence that the defendant was personally served or appeared in the action. Under these circumstances, if Gussie was a resident of New York, the Chicago divorce would have been invalid against her on grounds of public policy. *Berney* v. *Adriance,* 157 App. Div. 628, 630; *People* v. *Baker,* 76 N. Y. 78; *Cross* v. *Cross,* 108 id. 628; *Lynde* v. *Lynde,* 162 id. 412; *Winston* v. *Winston,* 165 id. 553; *Haddock* v. *Haddock,* 201 U. S. 562. In June, 1912, Baker was married to Bertha Baker, the petitioner, in Boston, Mass. One daughter was born to them, now six and one-half years old. They subsequently became residents of New York, and Baker died a citizen and resident of this state. The contention of the administratrix is that the rule of public policy con-

tained in the cases cited is extended to citizens of other states where the property of the intestate is situated here or where the jurisdiction of our courts is exercised in determining the rights of parties.

The recent decisions of our courts, however, clearly limit this rule of public policy only to residents of our state.    Justice Page states the rule in the recent case of *Kaiser* v. *Kaiser,* 192 App. Div. 400: " We have also held that where neither of the parties to the action was a citizen of this State at the time the action was brought in the foreign state, such a judgment would be recognized as binding, because this rule of public policy is enforcible only for the protection of the citizens of this state.    (*Kaufman* v. *Kaufman,* 177 App. Div. 162; *Schenker* v. *Schenker,* 181 App. Div. 621, affd., 228 N. Y. 600; *Ball* v. *Cross,* 190 App. Div. 711; *Hubbard* v. *Hubbard,* 228 N. Y. 81.)"    *Percival* v. *Percival,* 106 App. Div. 111, affd., 186 N. Y. 587. *Matter of Coltabellotta* (183 App. Div. 753, 758) cites *Kaufman* v. *Kaufman* and *Percival* v. *Percival, supra,* with approval, and that case is not authority as claimed by the administratrix for a determination in her favor.    There the matrimonial domicile was in Pennsylvania, and the wife resided there at the time of the foreign divorce.    That state, following New York's policy, had refused to give validity by comity to judgments of divorce in foreign states against its citizens who were not personally served. Connecticut, on the contrary, extends comity and recognizes such divorces (in actions where there is no personal service) as valid against its own citizens. Apparently, therefore, if Baker had died a resident of or leaving property in Connecticut his first wife would have had no standing.

. The cases of *Gildersleeve* v. *Gildersleeve,* 88 Conn. 697, 698, and *Pettis* v. *Pettis,* 91 id. 608, clearly define the rule adopted by that state.    In the former case the

Surrogate's Court, New York County, June, 1920.    [Vol. 112.

court said: " It has long been the policy of this State to grant divorces for desertion. Surely the period of it is not so much of the essence of the matter and does not so vitally affect public policy that it reasonably can be said that the granting of divorces for a period of desertion less than our own is so repugnant to our conception of public policy and of what makes for good morals as to justify us in refusing to recognize the judicial action of sister States in dissolving marriages under the conditions stated.  *  *  *  We certainly cannot consistently complain of the foreign divorce which was granted to this defendant, as being one obtained by methods not consonant with our public policy, as having been granted against a nonappearing nonresident, who was not served with process within the foreign jurisdiction.  Our statutes provide, and have long provided, for service upon nonresidents precisely like that resorted to by the South Dakota court, and authorized the grant of divorces upon such service.  *  *  *  It is no light matter, as affecting individual, social or civic interests and good morals, that, through the attitude of the courts in refusing recognition to the judicial action of sister States a condition should be created where legitimacy becomes dependent upon State lines, where wives in one State become concubines when they pass into another, where a husband or wife living in lawful wedlock in one jurisdiction is converted into a bigamist by change of location, where persons capable of inheritance in one part of our country are incapable in another, where certainty of status may readily give place to uncertainty and property rights be thrown into confusion."  The facts in the *Gildersleeve* case are very similar to the case here — willful abandonment by the husband and birth of a child; but notwithstanding these facts, the court denied its protection to the abandoned wife in Connecticut. In *Pettis* v. *Pettis*, 91 Conn. 608, this decision is fol-

lowed with approval, and the validity of such *ex parte* divorce decrees is confirmed. The second wife is a resident of our state, and if the New York rule was applied here Gussie Baker would receive greater consideration from our state than she would have received from her own commonwealth. Collin, J., in *Hubbard* v. *Hubbard, supra,* pointed out that our policy is to promote the permanency of the marriage contract and the morality of the citizens of our state.

The state of New York was not a party to any of the marital transactions of these rival claimants. As husband and wife neither Gussie Baker nor the deceased resided in New York. Bertha and her husband came here after their status had been changed by the divorce, and after a valid marriage in Massachusetts. The Connecticut doctrine is a most perfect example of reciprocity. She grants divorces against nonresident defendants, and in turn recognizes those obtained in foreign states. Proof of the law of Illinois was not submitted to the court by the administratrix, and the decree there following a residence by the plaintiff for a substantial period of time must be held regular. In addition, there is a strong presumption in favor of the legitimacy of the infant daughter, the issue of the second marriage. *Matter of Meehan,* 150 App. Div. 681; *Barker* v. *Barker,* 172 id. 244; *Matter of Biersack,* 96 Misc. Rep. 161.

The decision of this motion must be accompanied by hardship. The innocent first wife is deprived of her share in the estate of her husband. Fortunately her daughter is not so punished, but will take one-third of the estate. The decisions of the Court of Appeals and the Appellate Division cited above are conclusive, and this court must, in obeying them, grant the motion and oust the administratrix.

Decreed accordingly.