## Foster v. Foster

*Harry F. Garrett*, for plaintiff.
*George A. Baldwin*, for defendant.

MCCREARY, P. J., December 1, 1949.—On June 12, 1948, plaintiff, Theodist Foster, filed a complaint in divorce against defendant, Ceola Simmons Foster,

praying the court to enter a decree in divorce a. v. m., alleging as ground therefor that "the said Ceola Foster, the defendant, herein named, on or about to-wit the 1st day of July, 1944, wilfully and maliciously and without reasonable cause, deserted the plaintiff and absented herself from their habitation, and has continued in said desertion during the term and space of two (2) years and upwards to-wit, from on or about the 1st day of July, 1944, thence hitherto, contrary to the wishes of the plaintiff and without his consent." Defendant filed an answer denying the material allegations of the complaint, and in particular the allegation of wilful and malicious desertion.

The matter came on to be heard before a master who recommended the granting of a divorce a. v. m. on the ground of desertion, and defendant promptly filed exceptions to the findings of fact, conclusions of law and recommendation of the master. The master just as promptly overruled the exceptions and they were renewed of record and are now before the court en banc for determination.

The exception with which we are particularly concerned is exception no. 3, reading as follows:

"3. The defendant excepts generally to the Master's failure to conclude as a matter of law that the matters relied upon by the plaintiff in said case to establish his grounds for divorce were decided contrary to the contentions of said plaintiff by a previous adjudication of a Court of competent jurisdiction, to-wit, the adjudication of the Court of Common Pleas of Columbiana County, Ohio, at No. 33013, and that the plaintiff as to such matters is concluded by said former adjudication."

The controlling issue in the case we are considering revolves about the effect to be given to an exemplification of the record of the Court of Common Pleas of the County of Columbiana, State of Ohio. It appears

from the exemplification of the record, offered in evidence as defendant's exhibit A, that on September 14, 1944, at no. 33013, one Ceola Foster, as plaintiff, filed a petition for alimony against Otis Foster, as defendant, otherwise known as Theodist Foster, and that, as appears by the return of the sheriff, a copy of the petition and notice to answer was served personally on defendant on September 18, 1944. It further appears from the docket entries that on September 21, 1944, an answer was filed by defendant denying the material allegations of plaintiff's petition, and on the same day a cross-petition was filed by defendant asking the court to grant him a divorce. It further appears from the record that a copy of the answer and the cross-petition were served on Ceola Foster, plaintiff, on September 22, 1944. The record shows that on September 29, 1944, a hearing on temporary alimony was had before the court and defendant was ordered to pay plaintiff the sum of $5 per week pending a final hearing, and defendant was further ordered to pay plaintiff's attorney $50, payable $25 in 30 days and the balance in 60 days. It further appears that on October 27, 1944, on plaintiff's motion to increase alimony, a further hearing was had and the temporary alimony was increased from $10 to $15 per pay. It further appears that the matters came on for hearing on the merits on April 19, 1945, and on the same day Judge Joel H. Sharp entered an order which reads as follows:

"This cause came on this day to be heard upon the petition of the plaintiff and the cross-petition of defendant, and the evidence offered by the parties.

"The court finds that plaintiff had the necessary and requisite residence in this county and State at the time of the commencement of this action and that the court has jurisdiction of the cause of action and of the parties.

"On consideration of the evidence, the court finds, that defendant has failed to sustain the allegations of his cross petition and the same is hereby dismissed.

"The court further finds from the evidence, that defendant has been guilty of extreme cruelty and gross neglect of duty toward plaintiff, as charged in her petition, by reason thereof she is entitled to alimony.

"It is hereby ordered, decreed and adjudged that defendant pay to plaintiff as alimony, in money, the sum of $50 per month until the further order of this court and defendant is hereby ordered to pay the costs of this proceeding."

The record shows no appeal from this final order of the court, but it does further show that on July 30, 1945, a rule was allowed requiring defendant to show cause why he should not be punished for contempt, and that on August 24, 1945, an order was made continuing the hearing to September 21, 1945, at 9 a. m., and as a result of the hearing the court found defendant guilty of contempt and ordered him to be jailed for three days thereafter. On April 8, 1946, a further rule was allowed requiring defendant to appear Friday, May 3, 1946, to show cause why he should not be punished for contempt. On May 3, 1946, the following order was made:

"Parties and counsel appeared. Hearing on charge of contempt and defendant's motion to modify. Defendant's motion to modify overruled. Court finds that defendant is in arrears in alimony in amount of $450 and judgment is rendered for plaintiff against defendant for said amount. Defendant found in contempt and sentenced to 10 days in jail, but sentence is suspended if defendant makes regular payments of $50 per month and $10 per month in addition upon arrearages."

On June 28, 1946, another rule was allowed requiring defendant to appear Friday, July 19, 1946, to show

cause why he should not be punished for contempt, and on the date set for hearing defendant did not appear and an attachment was ordered to issue for defendant forthwith. It further appears from the exemplification of the record that on July 31, 1946, "defendant having paid all arrearages of alimony to plaintiff's satisfaction, the charge of contempt is dismissed, and attachment withdrawn by agreement of both parties". The record further shows that on November 7, 1946, a rule was allowed requiring defendant to appear December 6, 1946, and show cause why he should not be punished for contempt, and that on December 6, 1946, plaintiff and her counsel appeared, and defendant, although personally served with summons for contempt, failed to appear. An order for attachment was accordingly issued for defendant forthwith.

From the testimony of plaintiff himself in the case we are now considering, and it appears to be uncontradicted, he left the jurisdiction of Columbiana County, Ohio, on December 6, 1946, and took up his residence in Midland, Beaver County, Pa.

This record poses the question as to whether the courts of Pennsylvania are obliged to recognize it as a bar to the present divorce proceeding instituted by Theodist Foster, or whether it is to be regarded in the light in which the Pennsylvania courts regard their own orders made under the provisions of section 733 of The Penal Code of June 24, 1939, P. L. 872, commonly known as "the desertion and nonsupport section" of The Penal Code.

We do not have to determine the effect of a Pennsylvania court order made in a desertion and nonsupport proceeding in the court of quarter sessions under the provision of our Penal Code. It has been decided in a number of cases that in Pennsylvania a support order does not foreclose the right of defendant to a subsequent decree of divorce though upon grounds

which would have defeated the claim for support if they had been advanced. The true rule in Pennsylvania is that in a divorce proceeding where defendant offers in evidence a record of an order made by a Pennsylvania court in a desertion and nonsupport proceeding, although not conclusive, it is admissible and is evidence against the husband which requires a strong case to overcome: Knapp v. Knapp, 152 Pa. Superior Ct. 412; Loughney v. Loughney, 111 Pa. Superior Ct. 214; Knode v. Knode, 159 Pa. Superior Ct. 210; Keller v. Keller, 160 Pa. Superior Ct. 480; Boughter v. Boughter, 164 Pa. Superior Ct. 574; Van Dyke v. Van Dyke, 135 Pa. 459.

We have no quarrel with any of these decisions nor with the reasoning which prompts the Pennsylvania courts to so decide as far as interpreting the effect of our desertion and nonsupport statute is concerned. However, we have before us for consideration a far different proposition. The undisputed facts in the case at bar fairly raise the questions of law which this court must now determine, namely: (1) Where the court of the matrimonial domicile of two persons, having juridiction of the persons and subject matter, enters a decree for permanent alimony and separate maintenance in favor of the wife, and dismisses the husband's cross petition for a divorce, finding as a fact in its decree that "the defendant has been guilty of extreme cruelty and gross neglect of duty toward plaintiff" and that "defendant has failed to sustain the allegations of his cross petition and the same is hereby dismissed", may the disappointed husband come to Pennsylvania and succeed in a divorce action against this same wife on the ground of desertion? In brief, is an Ohio decree, under the circumstances, entitled to full faith and credit in Pennsylvania courts under the Constitution of the United States, such that as a matter of comity, or estoppel or res judicata, de-

fendant is deprived of the right to relitigate the same matters in a divorce action brought by him in Pennsylvania against the same wife on the ground of desertion? (2) In passing on the question of law, does the law of the State where the original judgment was entered govern, or are the Pennsylvania courts bound by the law of the forum?

I. Let us first examine into the matter of the effect which the Ohio courts give to their own decrees under similar circumstances. In the case of Hanover v. Hanover, 34 Ohio App. 483, 171 N. E. 350 (1929), an action had been brought by the wife for alimony on the ground of abandonment by her husband, and the husband filed a cross petition praying for a divorce from his wife on the ground of gross neglect of duty. After trial the court found defendant guilty of gross neglect and dismissed the husband's cross petition and granted alimony to the wife, just as was done by the Columbiana County Court in the case we are now considering. Later on the husband moved to another county in Ohio and filed an action for divorce on the ground of gross neglect of duty and extreme cruelty. The wife answered the complaint and pleaded res judicata. The appellate court affirmed the lower court in dismissing the complaint, emphasizing that the husband did not claim any misconduct on the part of his wife subsequent to their separation other than the mere fact that they had not since lived together, and that therefore the issues involved in the prior action were identical with those litigated and determined in the divorce action.

In other words, the Ohio courts attribute a decree of finality to their decrees for alimony not accorded by Pennsylvania courts to our support orders.

What effect do other State courts give to Ohio decrees for alimony? It is interesting. In the case of Kalisch v. Kalisch, 9 Wis. 529, it appears that in an

Ohio court a wife had sued for alimony on the ground that "without any cause her said husband had abandoned her; and, further, that she has separated from her husband in consequence of his ill treatment towards her". After the husband took issue upon these allegations, the court in its decree in favor of the wife distinctly found that she had conducted herself as her duty to her husband demanded, that the husband had abandoned his wife without good cause and that there was a separation between the parties in consequence of ill treatment on the part of the husband. The Wisconsin appellate court, when the husband moved into that jurisdiction and sued for an absolute divorce on the ground of desertion, held that he was precluded from suing for an absolute divorce on the ground of desertion, it being manifest from the record that the fact of desertion on the part of the wife, which was the only ground relied on in the husband's complaint for divorce, had been once tried and found against the husband. It was contended by the husband that "the judgment in the Ohio suit ought not to be a bar to this action, because the object of the former and present suit was different". The court rejected this argument, saying: "We cannot perceive why, in this view, the former judgment directly upon the point of desertion is not a bar."

It will be noted in this Wisconsin case that the Ohio court had gone no farther than to decree alimony in favor of the wife. In the case we are considering at bar the Ohio court not only decreed alimony for the wife but dismissed the husband's cross petition for divorce, necessarily finding that the wife was justifiably living separate and apart from her husband.

Wisconsin is not the only appellate court which analyzed the Ohio alimony statute as the Ohio courts treat it. We have also the reasoning of the Nevada

courts on the subject in the case of Silverman v. Silverman (1930), 52 Nev. 152, 283 Pac. 593.

In the case just referred to, after litigation in an Ohio court the husband's suit for a divorce alleging extreme cruelty and gross neglect of duty was dismissed on the merits, and at the same time the wife was awarded permanent alimony on a finding that the husband had been guilty of gross neglect of duty toward her. The husband then went to Nevada and filed a suit for an absolute divorce. The highest court in Nevada held that the husband was precluded by the Ohio decree granting the wife permanent alimony from showing desertion on her part, the court saying (p. 167):

"It is manifest, from the proceedings in the Ohio court, that the issue of wilful desertion, presented in the case at bar, is identical with the issue of the wife's separation from her husband without fault, presented in her maintenance suit, upon her cross petition in the husband's action for divorce upon the ground of 'intolerable cruelty'. The decree of the Ohio court, in legal effect, established that the separation of the wife from the husband was lawful, and therefore conclusively operated to prevent the same separation from constituting a willful desertion by the wife of the husband as charged in the complaint in this action."

Two other Ohio court decisions on the subject will suffice for our present purposes before we pass to the consideration of cases in other jurisdictions having laws for alimony and separate maintenance similar to the laws of Ohio. Let us consider the case of Condon v. Condon, 8 Ohio App. 189. In that case, upon a wife's suit for alimony and the husband's cross petition for a divorce, the court, after trial, had found as a fact that the husband had wilfully abandoned and deserted her on a certain date, and as a consequence thereof had granted alimony to the wife. The appellate court held

that such judgment could be pleaded as res judicata to the husband's subsequent action for divorce charging that his wife had been guilty of wilful absence for more than three years. The court held that this question had already been determined against the husband and was therefore not subject to be reopened and relitigated in a subsequent action between the same parties. The court added that no divorce can be had for wilful absence or separation where the separation on the part of the accused person is justified, and that a wife is justified in living apart from her husband where she has been granted the right to do so by obtaining a decree for separate support and maintenance, this decree fixing the status of the parties.

The most illuminating Ohio case which we have come across in our search of the law on this subject is the case of Picker v. Picker, 46 Ohio App. 82, 187 N. E. 749. In that case the husband commenced an action in the Court of Common Pleas of Sandusky County to secure a divorce from defendant, his wife, on the grounds of extreme cruelty and gross neglect of duty. Defendant filed an answer thereto. When the case came on for trial the judge dismissed the petition on the ground that the matters in controversy were res judicata. It appeared at the trial, from the record, that the parties had resided in another county of Ohio in which the wife had previously sued her husband for alimony based upon a claim that a separation existed between the parties because of misconduct of the husband. In the original action the husband appeared, and the court found that the wife was entitled to relief as prayed for in her petition, and ordered that the husband pay her the sum of $5 per week for alimony. The Sandusky County court held that the judgment of the court of Huron County, granting the wife alimony and separate maintenance, was res judicata

in the Sandusky County action of the husband for divorce, and for that reason the husband's petition for divorce should be dismissed. The court of appeals affirmed, the court saying, in part, as follows:

"The question of the bar of a judgment for maintenance when a subsequent suit is brought by the husband for divorce was determined against the contention of the husband in the case of Harding v. Harding, 198 U. S. 317, 25 S. Ct. 679, 49 L. Ed. 1066. In that case the wife had sued the husband in Illinois for support and maintenance, based on the charges of cruelty and adultery, and contending that she was without fault. In that case the judgment was rendered in favor of the wife. Thereafter the husband removed to California where he brought an action for divorce on the ground of desertion, and the wife pleaded the judgment in the Illinois court as an estoppel. The Supreme Court of California (140 Cal. 690, 74 Pac. 284) ruled that the prior judgment was not a bar, whereupon the case was taken to the Supreme Court of the United States where the judgment of the California court was reversed, the Supreme Court of the United States holding that the issues in the Illinois case and the California case were practically the same, and that the Illinois judgment awarding alimony to the wife was an estoppel in the suit for divorce subsequently brought by the husband."

See also, Appleton v. Appleton, 97 Wash. 199, 166 Pac. 61; Reibesehl v. Reibesehl, 106 N. J. Eq. 32, 149 Atl. 823; Kelly v. Kelly, 118 Va. 376, 87 S. E. 567; Levine v. Levine, 274 Ill. App. 354; Miller v. Miller, 160 Mass. 111, 22 N. E. 765; Taylor v. Taylor, 72 N. H. 597, 57 Atl. 654.

II. The master conceives that since the Pennsylvania courts do not attribute such conclusiveness to its support orders made under authority of section 733 of The Penal Code of June 24, 1939, P. L. 872, it should

not permit the decrees of sister States to assume any higher dignity. He apparently loses sight of the fact that the law of the jurisdiction where the judgment was rendered rather than the law of the forum should govern in determining the effect of the judgment. This was conclusively determined by the Supreme Court of the United States in the case of Harding v. Harding, 198 U. S. 317, 49 L. Ed. 1066, where it was held that the Illinois law should be applied by California courts in determining the effect of an Illinois decree for separate maintenance in favor of a wife. The Supreme Court of the United States reversed the California court which had held that the Illinois decree for separate maintenance was no bar to the action of the husband for an absolute divorce in California. The court said (pp. 338, 340):

"Having thus disposed of all the contentions based upon the assumed consent under the decree for separate maintenance or the asserted limitations to such a decree, based upon the law of Illinois, we are brought to consider the final question, which is, Was the decree in favor of the wife for separate maintenance entered in the Illinois case conclusive upon the husband in the courts of California of the issue of wilful desertion? . . .

"We are of opinion that the final decree of July 26, 1897, entered in the circuit court of Cook County, Illinois, in legal effect established that the separation then existing and which began contemporaneously with the filing of the bill in that cause in February, 1890, was lawful, and therefore conclusively operated to prevent the same separation from constituting a wilful desertion by the wife of the husband. From these conclusions it necessarily follows that the issue presented in this action for divorce was identical with that decided in the suit in Illinois for separate maintenance. This being the case it follows that the Supreme Court of California, in affirming the judgment of divorce, failed to give to the decree of the Illinois court the due

faith and credit to which it was entitled, and thereby violated the Constitution of the United States."

The law of the Harding case has been cited with approval in practically every jurisdiction in the United States, including Pennsylvania, and we have no doubt that the law of Ohio must govern the courts of Pennsylvania under the principles of conflicts of laws in interpreting the effect of the judgment of the Court of Common Pleas of Columbiana County in the matter which arose between these same two parties in 1944 and 1945.

Likewise, where, in the husband's suit for an absolute divorce on the ground of desertion in a Virginia court, the wife interposed a plea of res judicata in reliance on the decree of a Massachusetts probate court awarding her separate maintenance and support, it was held in Kelly v. Kelly, 118 Va. 376, 87 S. E. 567, that the effect of the Massachusetts decree as res judicata in the subsequent divorce proceedings in Virginia was governed by the law of Massachusetts, the court pointing out that "If a judgment is conclusive in the state where it was pronounced, it is equally conclusive everywhere in the courts of the United States".

Similarly, the question whether a decree of judicial separation rendered in favor of the wife by an English court precludes the husband from relying, in his action for an absolute divorce in a Nevada court, on acts committed by the wife prior to this decree, was held in Bates v. Bates, 53 Nev. 77, 96, 292 Pac. 298, 296 Pac. 1112, to be governed by English law, the court emphasizing that, according to the testimony of English barristers, a like judgment of judicial separation rendered in a Nevada court would be accorded the same effect in England.

A diligent search on our part has failed to reveal a case where the precise question now being considered has been raised and ruled in Pennsylvania, unless it

might be the case of DiPasquale v. DiPasquale, 162 Pa. Superior Ct. 29. In that case a New York court had granted the husband's claim for separation and awarded the custody of the children to the husband. The wife lived in Erie County, Pa. Without objection on the part of the husband the wife had the children with her and kept them in Erie County. She made an information against her husband in Erie County for the support of herself and these children. The Superior Court of Pennsylvania determined that since the New York court had not made any order for the support of the children by the husband, the Quarter Sessions Court of Erie County had authority to make an order for the support of the children as long as the wife had them in her custody, and affirmed the Erie County Quarter Sessions Court in refusing to grant an order of support in favor of the wife, apparently on the sole ground that the New York court had determined that the husband was entitled to live separate and apart from the wife.

Another case which may throw some light on the question in Pennsylvania is the case of Bates v. Bates, 153 Pa. Superior Ct. 133. In that case the court had to pass upon the effect of a divorce a mensa et thoro entered by a New Jersey court wherein the wife secured a decree for separate maintenance and support against the husband. It appears that the husband did not personally appear nor testify in his own behalf in that proceeding. The court concluded that it was not res judicata in Pennsylvania. However, the court did not pass upon the question as to whether it would have been res judicata if the New Jersey court had had not only jurisdiction of the subject matter but also personal jurisdiction of the husband, because Pennsylvania is in accord with A. L. I. Restatement of the Law of Conflicts of Laws, §114, which reads as follows:

"A state can exercise through its courts jurisdiction to grant judicial separation to any spouse petitioning therefor where both parties are subject to the jurisdiction of the courts of the state."

The exact question we are now considering was therefore not before the court.

We have no hesitation, however, in reaching the conclusion that (1) the decree of the Ohio court would be a bar to an action for absolute divorce instituted by plaintiff in the instant case, defendant in the Ohio decree, if the action had been instituted in Ohio, and (2) that the law of Ohio, the State where the decree was rendered, governs rather than the law of the forum, Pennsylvania. This being the case, none of the cases cited by the master or plaintiff, pointing to the law of the forum, Pennsylvania, such as those mentioned in the forepart of this opinion, are in point.

Defendant points to a lower court case which we believe is in point, however, as properly applying the law of Pennsylvania, when the first action, instituted by the wife, is an action for a judicial separation in the nature of a divorce as a mensa et thoro. The case is Crawford v. Crawford, 47 Pa. C. C. 56. The court there held that where a wife has secured a divorce a mensa et thoro in Pennsylvania it is a bar to an action by the husband in a later proceeding in Pennsylvania grounded on the same cause. The court held that the judgment of a court in actions for divorce where it has jurisdiction is, on a matter directly in issue, conclusive on the same matter between the same parties in another suit and even if the subject matter of the two cases were not wholly identical but only partially so, still a single fact which had been once adjudicated between the parties would be conclusive between the same parties in a later case between them, on the ground of estoppel. The reasoning of the court in this case is unimpeachable, and no doubt would have been

pronounced by our appellate courts as the law of Pennsylvania if the case had reached the appellate courts on appeal. A careful reading of the opinion of the trial judge in this case is recommended to all those who are interested in the subject matter now under discussion.

Lastly, it is the contention of plaintiff that since the exemplification of the record, offered in evidence by defendant, did not contain a transcript of the evidence and did not contain any separate finding relating to desertion, except a finding that the wife was entitled to alimony and separate maintenance because the husband had been guilty of extreme cruelty and gross neglect of duty toward plaintiff, the pleadings and judgment in the prior suit were required to be examined to ascertain what was involved and determined in that suit. With this we cannot agree. Such a proposition was advanced in the case of Gill v. Gill, United States Court of Appeals for the District of Columbia, 147 F.(2d) 154, and was decided January 31, 1945, adversely to the contention of plaintiff in this case. The court held that where judgment for separate maintenance has been entered, without separate findings and in the absence of transcript of evidence, in a subsequent action between the same parties, the trial judge may not reject as unproved any facts pleaded or grounds alleged which, if proved, had any reasonable tendency to establish the conclusion of the trial judge in the prior action or to support the judgment. The court further held that a judgment in the prior action between the same parties is res judicata on the points and matters in issue and adjudicated in such action.

Inasmuch as the copy of the record of the Common Pleas Court of Columbiana County, State of Ohio, shows that the court found defendant had failed to sustain the allegations of his cross petition and dismissed the same, and further found that defendant had been guilty of extreme cruelty and gross neglect of duty

toward plaintiff and decreed that defendant pay to plaintiff, as alimony, the sum of $50 per month, and inasmuch as the effect of such findings and decree would be a bar to an action for divorce on the ground of desertion in Ohio, if such action were instituted in Ohio by the husband, it is likewise a bar to a similar action in Pennsylvania. Thus Pennsylvania will be saved from the tragedy of being a haven for disappointed husbands who failed in their litigation in Ohio and who cannot get relief in the Ohio courts. Pennsylvania will not become a refuge where defeated contestants may assemble to relitigate marital difficulties which have been passed upon by neighbor tribunals having jurisdiction of the parties and of the subject matter and which have, after trial, pronounced solemn judgment on the subject matter before them.

We are not required to pass upon any issue which may have arisen since the decree of the Ohio court was entered. It is altogether possible for plaintiff to seek and obtain the aid of the Pennsylvania courts for a cause which has arisen since the Ohio decree was entered or which was not litigated in that action. From the evidence the Ohio decree is still in full force and effect. Plaintiff in the present case, defendant in the Ohio decree, is in default in his payments and no move has been made by present plaintiff to have the Ohio decree modified or set aside. Until he succeeds in having it set aside, it is binding on the Pennsylvania courts and bars an action for divorce in Pennsylvania on the ground that the wife "wilfully and maliciously and without reasonable cause deserted" the husband, "on or about July 1, 1944", a date more than nine months prior to the Ohio decree granting the wife permanent alimony and dismissing the husband's cross petition for a divorce.

For the reasons stated we make the following

502

*Order*

Now, December 1, 1949, the exceptions to the master's report are sustained, and it is now ordered that the complaint be dismissed at the cost of plaintiff.