MATTER OF PEARSON

In Visa Petition Proceedings

A-17520162

*Decided by Board February 26, 1969*

(1) Visa petition to accord beneficiary immediate relative status was properly denied for failure to prosecute since petitioner failed to appear for interviews, as requested, to clarify the legal termination of his previous marriage.

(2) Since the divorce obtained by petitioner in Mexico dissolving his prior marriage, in connection with which he was in Mexico only a few hours to obtain an attorney and did not appear before the Mexican court, is not valid under the laws of Nevada, the State where his subsequent marriage to beneficiary was contracted, nor under the laws of New York, the State of matrimonial domicile, such marriage is not valid to confer immediate relative status on beneficiary.

ON BEHALF OF PETITIONER:
Edwin L. Wolf, Esquire
40 Worth Street
New York, New York 10013
Kenneth Carroad, Esquire
(Of counsel)

ON BEHALF OF SERVICE:
Irving A. Appleman
Appellate Trial Attorney

On August 8, 1967, the petitioner, a United States citizen, filed a visa petition on behalf of his spouse, a native and citizen of the Philippines. The petition recited that the parties were married on February 18, 1967 in the State of Nevada and thereafter resided in California until May 31, 1967. The record reflects that since July 8, 1967, the parties have resided in the City of New York. The petitioner had been married previously and submitted with the visa petition is a decree of divorce obtained by the petitioner in the Country Court of Yautepec, Fifth Judicial District, State of Morelos, Republic of Mexico. The divorce was granted on July 10, 1959. On October 5, 1967, the petitioner was interviewed by an immigrant inspector. The petitioner stated that he went to Mexico in 1959 to obtain an attorney, remaining there for a few hours, and did not appear before the Mexican court. He was ad-

vised by his Mexican attorney that the divorce was legal in the United States. Thereafter the petitioner was summoned for further interviews. Failing to appear, the District Director, on August 23, 1968, denied the visa petition for lack of prosecution and for petitioner's failure to resolve the issue of the validity of his present marriage to the beneficiary.

Counsel on appeal argues that the visa petition should not have been denied for failure to prosecute. He states that petitioner, a seaman, has been on the high seas since June 1968, and was unable to present himself for interview. Failure to appear, counsel asserts, should not be the basis for denial of a visa petition based on a marriage formalized in conformity with the laws of the State of Nevada and followed by actual cohabitation of the parties.

We have reviewed the entire record. We find that the District Director properly denied the visa petition for failure to prosecute. The burden is upon the petitioner to establish eligibility for the benefits he seeks under the immigration laws, *Matter of Awadalla*, 10 I & N Dec. 580 (1964); *Matter of Brantigan*, 11 I. & N. Dec. 493 (1966). The burden upon petitioner never shifts and is not satisfied by the mere presentation of documentary proof that he has obtained a divorce. Petitioner must show that the marriage he has obtained a divorce. Petitioner must show that the marriage presently contracted is valid where celebrated and that any previous marriages have been legally terminated. By failing to appear for interviews to dispel the doubts raised by his Mexican divorce, he failed to prosecute his petition for benefits under the immigration laws.

Turning to the question of the effect of the Mexican divorce on the validity of petitioner's present marriage, we reject the notion that we must accept at face value the divorce rendered in Mexico. The issue, here, is whether the Mexican divorce will be recognized by Nevada, the *lex celebrationis*, thereby rendering the marriage valid.

Counsel argues that it is not the function of the Service to explore the ramifications of legal questions of domicile, residence and the like involved in foreign divorce decrees, citing as authority *Matter of B——*, 3 I. & N. Dec. 227 (1948). That case involved a person who had been physically present in Mexico for a period of four days and had appeared before a "civil judge" although the divorce had not been granted before he left Mexico. That decision, holding that the administrative agency's inquiry should end when it has been ascertained that the person had been physically present in the divorce court's jurisdiction, is based on a

previous holding by the Attorney General. In a prior decision, *Matter of O—*, 3 I. & N. Dec. 33 (1949), the Attorney General held that in visa petition cases, the validity of a foreign divorce is to be determined in accordance with the prevailing law of the country in which the subject is domiciled and physically present at the time the divorce is granted. In *Matter of P—*, 4 I. & N. Dec. 610 (1952), the Attorney General later changed his position, thereby also overruling indirectly *Matter of B—, supra,* stating that the validity of marriage is governed by the place where the marriage took place. Another case, *Matter of B—*, 5 I. & N. Dec. 659 (1954), relied on by counsel, applies this new rule to determine whether a Mexican divorce, rendered where the Mexican court had jurisdiction over one of the parties, would be recognized under California law, the place of celebration. However, in *Matter of B—, supra,* one party was in Mexico for over a week and the other party was represented by counsel. In the case before us, the former spouse of the petitioner did not appear in court, either personally or through authorized counsel. In accordance with the rule set down in *Matter of P—, supra,* we reject the notion that this Mexican divorce should be accepted at face value and we look to the laws of Nevada to determine the legal effect of the Mexican divorce upon the marriage in question.

We have recently decided a similar case. In *Matter of Adamo,* Interim Decision No. 1910 (1968), we concluded that Nevada would not recognize a Mexican divorce where neither of the parties had obtained domicile in Mexico. In *Adamo,* the petitioner had gone to Mexico to obtain a lawyer but did not submit himself to the jurisdiction of the Mexican court, nor did he acquire residence or domicile in Mexico. We found that under the laws of Nevada, mere physical presence in a foreign jurisdiction as opposed to actual domicile will not suffice to confer jurisdiction in a foreign court over the subject matter in a divorce proceeding, *Bates* v. *Bates,* 53 Nev. 77 292 P. 298 (1930). Consequently, we held that Nevada would not recognize petitioner's divorce obtained in Mexico where he had not assumed domicile. The marriage between the parties was determined to be void.

Counsel for petitioner asserts that New York, the matrimonial domicile of the parties, would rule on the question differently. Under New York law, a marriage which is valid where performed, in the absence of contrary public policy, will be recognized in New York, though it would be invalid if performed in New York, *Herndon* v. *Herndon,* 164 N.Y.S. 2d 568 (1967). However, even under such a rule, we find that New York would arrive

at the same result as the State of Nevada in determining whether the Mexican divorce legally terminated petitioner's previous marriage. Citing *Rosenstiel* v. *Rosenstiel*, 262 N.Y.S. 2d 86 209 N.E. 2d 709 (1965), counsel asserts that New York no longer views domicile as a jurisdictional requirement to the recognition of foreign divorce decrees. We do not find that the *Rosenstiel* case stands for such a proposition. The *Rosenstiel* case involves facts different from those presented here. That case concerns itself with a bilateral Mexican divorce. There the party-plaintiff went to Mexico, signed the Municipal Registry and was physically present in Mexico for a total of one hour. However, the defendant spouse also went to Mexico, appeared in the Mexican court by a duly authorized representative and filed an answer in which she submitted to the jurisdiction of the Mexican court. The New York court, although finding that neither party had domicile in Mexico, determined that both parties to the divorce had submitted to the jurisdiction of the Mexican court. The court in *Rosenstiel*, if faced with a situation such as is before us, would declare the divorce of no effect since only one of the parties submitted to the jurisdiction of the Mexican court.

During oral argument, the Service representative questioned counsel's standing to appear in light of petitioner's apparent lack of interest in prosecuting this visa petition. Since we have decided the issues presented herein on their merits, we find it unnecessary to resolve the question of standing.

In summary, it appears in all respects that both Nevada and New York would not give extraterritorial effect to the Mexican divorce and consequently the marriage performed in Nevada between the petitioner and the beneficiary is void. We affirm the decision of the District Director.

**ORDER:** It is ordered that the appeal be and the same is hereby dismissed.